## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **Live Oak Banking Company**, a North Carolina corporation,<br><br>            Plaintiff,<br><br>   v.<br><br>**StreetShares, Inc., a Delaware corporation, and MeridianLink, Inc., a Delaware corporation**,<br><br>        Defendants. | C.A. No. 23-cv-332-GBW |

## PLAINTIFF LIVE OAK BANKING COMPANY'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS STREETSHARES, INC.'S AND MERIDIANLINK, INC.'S MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

Isabelle L. Ord (admitted *pro hac vice*)
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
(415) 836-2500
isabelle.ord@us.dlapiper.com

Akhil Sheth (admitted *pro hac vice*)
DLA Piper LLP (US)
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067-4704
(310) 595-3000
akhil.sheth@us.dlapiper.com

Michelle L. Morgan (DE Bar No. 3651)
Kelly L. Freund (DE Bar No. 6280)
**DLA PIPER LLP (US)**
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
(302) 468-5700
(302) 394-2341 fax
michelle.morgan@us.dlapiper.com
kelly.freund@us.dlapiper.com

*Attorneys for Plaintiff*
*Live Oak Banking Company*

## <u>TABLE OF CONTENTS</u>

Introduction ................................................................................................................................1

The Allegations of the FAC Establish Distinct Claims ...............................................................2

Discussion ..................................................................................................................................8

I.     MeridianLink is a proper defendant because MeridianLink's own words and actions—including MeridianLink's assumption of contractual obligations, work on the Live Oak Bank project, invoicing of Live Oak Bank, and response to pre-litigation correspondence sent to StreetShares—show that it assumed the obligations of and is StreetShares' successor-in-interest ......................................................8

     a.     MeridianLink need not have a "direct" contractual relationship with Live Oak Bank ...........................................................................................................9

     b.     Live Oak Bank alleges that MeridianLink is liable under a successor-in-interest theory that is recognized under both Delaware law and the contract language ........................................................................................................10

     c.     As alleged in the FAC, by its actions and words MeridianLink has shown that it is StreetShares' successor-in-interest .......................................................10

II.    Live Oak's claims for declaratory judgment, breach of the implied covenant of good faith and fair dealing, and unjust enrichment are distinct from the breach of contract claim and sufficiently pled ......................................................................................12

     a.     Live Oak Bank's declaratory judgment claim addresses distinct issues from the breach of contract claim and it is premature to determine otherwise ..............12

     b.     Live Oak Bank's breach of the implied covenant claim centers on Defendants' implied obligation to provide a functioning automated underwriting platform in a timely manner ............................................................13

     c.     Live Oak Bank's unjust enrichment claim is properly pled in the alternative.......14

III.   Leave to Amend Is Appropriate Should the Court Grant Either Motion to Dismiss in Part or Whole ...........................................................................................................16

Conclusion ................................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*,
    435 F.3d 396 (3d Cir. 2006)............................................................................................4

*Allen v. El Paso Pipeline GP Co.*,
    113 A.3d 167 (Del. Ch.)................................................................................................13

*Aluminum Co. of Am. v. Beazer E., Inc.*,
    124 F.3d 551 (3d Cir. 1997)...........................................................................................12

*Davis v. BAC Home Loans Serv., LP*,
    No. 21-1713-CFC, 2022 WL 4535623 (D. Del. Sept. 28, 2022)...................................14

*Foman v. Davis*,
    371 U.S. 178 (1962)......................................................................................................16

*Garfield v. Allen*,
    277 A.3d 296 (Del. Ch. May 24, 2022) .......................................................................15

*Great Hill Equity Partners IV v. SIG Growth Equity Fund I, LLLP*,
    C.A. No. 7906-VCG, 2014 WL 6703980 (Del. Ch. Nov. 26, 2014) ......................................15

*Hanover Ins. Co. v. Ryan*,
    619 F. Supp. 2d 127 (E.D. Pa. 2007) ...........................................................................13

*Hillard v. Guidant Corp.*,
    37 F. Supp. 2d 379 (M.D. Pa. 1999) ..............................................................................9

*Huertas v. Galaxy Asset Mgmt.*,
    641 F.3d 28 (3d Cir. 2011).............................................................................................5

*Hydrogen Masters Rights, Ltd. v. Weston*,
    228 F. Supp. 3d 320 (D. Del.).......................................................................................14

*JJCK, LLC v. Project Lifesaver International*,
    No. CIV. 10-930-LPS, 2011 WL 2610371 (D. Del. July 1, 2011) ...........................................13

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*,
    768 F.3d 284 (3d Cir. 2014)...........................................................................................3

*Kuroda v. SPJS Holdings, LLC*,
    971 A.2d 872 (Del. Ch. 2009).................................................................................13, 14

*US Ecology, Inc. v. Allstate Power Vac, Inc.*,
    C.A. No. 2017-0437-AGB, 2018 WL 3025418 (Del. Ch. June 18, 2018) ..............................14

*USX Corp. v. Barnhart*,
    395 F.3d 161 (3d Cir. 2004)......................................................................................................16

**<u>Statutes</u>**

8 *Del. C.* § 259 ...........................................................................................................................10

**Introduction**

If there is a consistent theme in the approach of Defendants StreetShares, Inc. and MeridianLink to this dispute, it is their positional inconsistency. In Defendants' separate motions to dismiss Plaintiff Live Oak Banking Company's First Amended Complaint ("FAC"), StreetShares and MeridianLink implicitly concede that Live Oak Bank's claim for breach of contract is properly pled. Defendants also argue that Live Oak Bank's other claims—for declaratory judgment, breach of the implied covenant of good faith and fair dealing, and unjust enrichment—are impermissibly duplicative of that breach of contract claim such that they must be dismissed. Defendants do not acknowledge that in StreetShares' Answer and Counterclaims to Live Oak Bank's FAC, StreetShares asserts a similar breach of contract claim with claims for declaratory judgment, breach of the implied covenant, and unjust enrichment claims (along with an additional claim for anticipatory breach). Presumably, StreetShares perceives no problem with its own ability to pair a breach of contract claim with a claim for declaratory judgment, breach of the implied covenant, or unjust enrichment. Yet Defendants do not even try to explain why they believe StreetShares' more scantly pled allegations pass muster while Live Oak Bank's more robust allegations do not.

That is not the only inconsistency at the heart of the motions to dismiss. In addition to echoing all of StreetShares' arguments, MeridianLink includes an additional argument that it is not a proper party to this lawsuit. MeridianLink does so despite uncontroverted allegations in the FAC that, following MeridianLink's acquisition of StreetShares:

- MeridianLink's CEO signed one of the contracts at issue;

- MeridianLink employees—including MeridianLink's senior executives—took over StreetShares' obligations, worked on the Live Oak Bank project, and routinely communicated with Live Oak Bank from MeridianLink email addresses;

- MeridianLink invoiced Live Oak Bank on MeridianLink letterhead for work purportedly performed under the project-related contracts and directed any billing-related questions to MeridianLink rather than StreetShares;

- MeridianLink responded to pre-litigation communications that Live Oak Bank sent to StreetShares and sought to enforce the contracts;

- MeridianLink explicitly and repeatedly told Live Oak Bank that it was StreetShares' successor-in-interest with regard to the contracts at issue.

Defendants' positional inconsistencies find no footing in the law. As detailed below, Live Oak Bank has sufficiently alleged facts demonstrating that MeridianLink is a proper party here under a successor-in-interest theory; MeridianLink's assertions to the contrary raise a host of unanswered factual questions that cannot be addressed at the motion to dismiss stage, including why MeridianLink sought to enforce contractual obligations for and otherwise assumed and enjoyed benefits from contracts it now purports to disavow. And each of Live Oak Bank's non-breach of contract claims was properly pled and carefully distinguished from the breach of contract of claim in the FAC, including by specific allegations setting forth facts that are separate from the terms of the contracts. Neither of the motions to dismiss has any merit, and Live Oak Bank respectfully asks that the Court deny the motions to dismiss in whole.

### The Allegations of the FAC Establish Distinct Claims

Live Oak Bank describes the facts giving rise to this dispute in detail in its FAC. *See* FAC, D.I. 38. At the motion to dismiss stage, all of the FAC's well-pled allegations must be taken as

true and construed in the light most favorable to Live Oak Bank—something that both motions to dismiss seem to ignore when they wrongly protest that the FAC's allegations "are completely untrue." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*, 768 F.3d 284, 290 (3d Cir. 2014); StreetShares Mot. to Dismiss ("StreetShares MTD"), D.I. 46, at 2; MeridianLink Mot. to Dismiss ("MeridianLink MTD"), D.I. 48, at 2.

As alleged in the FAC, Live Oak Bank offers small businesses loans, including a type of loan known as a "Next Generation" credit loan. FAC ¶¶ 3, 23. When Live Oak Bank's customers applied for Next Generation credit loans in the past, it took days for Live Oak Bank's employees to manually review the submitted material, conduct underwriting, and tell loan applicants whether they will be able to obtain a loan and under what terms. *Id.* In 2021, to better serve customers and better compete in the marketplace, Live Oak Bank sought to speed up this process through a customized digital platform that could automatically review and decide on Next Generation credit loan applications within minutes, instead of days, using preset criteria provided by Live Oak Bank. *Id.* ¶¶ 4, 24, 25.

StreetShares claims to be a fintech company. *Id.* ¶ 19. In 2021, it represented to Live Oak Bank that it could quickly build Live Oak Bank this customized and automated loan application platform. *Id.* ¶ 25.

In the fall of 2021, Live Oak Bank contracted with StreetShares to build the automated loan application platform based on StreetShares' claims of competency. *Id.* ¶ 25. The first contract between Live Oak Bank and StreetShares was entitled Order Form No. 1 and was signed on behalf of StreetShares by its president at the time, Michael "Mickey" Konson. *Id.*, Ex. 1 at 6.

In March 2022, Live Oak Bank and StreetShares entered into a second contract, Order Form No. 2. *Id.* ¶ 28. In essence, Order Form No. 1 was a contract to build an automated loan

3

application platform and Order Form No. 2 was a contract to implement the platform such that Live Oak Bank's customers could use it. *See id.* ¶¶ 26–29. As with Order Form No. 1, Order Form No. 2 was signed by Mickey Konson on behalf of StreetShares. *Id.*, Ex. 2 at 4.

In April 2022, MeridianLink completed its previously announced acquisition of StreetShares. *Id.* ¶ 31.[1] Following the acquisition, Live Oak Bank and MeridianLink amended the terms of Order Form No. 1 through Amended Order Form No. 1. *Id.*, Ex. 3.

Unlike Order Form Nos. 1 and 2, Amended Order Form No. 1 was not signed by Mickey Konson. *Id.*, Ex. No. 3 at 5. Instead, Nicolaas Vlok signed Amended Order Form No. 1 as an "Authorized StreetShares Representative." *Id.* Vlok's digital signature on Amended Order Form No. 1 is as the CEO of MeridianLink, and not in any capacity as an executive of StreetShares:

---

[1]    MeridianLink's assertions are legally inappropriate and factually inaccurate. MeridianLink states that "[i]n March 2022, MeridianLink acquired StreetShares." As evidence of this March acquisition, MeridianLink cites its own press release, posted on its website, and a case supporting the ability of courts to take judicial notice of newspaper articles.

First, to the extent MeridianLink is asking the Court to take judicial notice, this is not a proper request for judicial notice upon which the Court can act. *See* Hon. Karen L Stevenson & James E. Fitzgerald, Federal Civil Procedure Before Trial § 9:212.17 (2023) ("A party requesting judicial notice should prepare and file a formal 'Request for Judicial Notice,' setting forth the matters to be noticed (with copies attached if appropriate) and the basis on which the court may take notice thereof."). No actual request for judicial notice is before the Court.

Second, MeridianLink's press release is not a newspaper article, and even it were, it cannot be considered for the truth of the matter asserted, as MeridianLink's own cited authority makes clear. *See Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 401 (3d Cir. 2006) ("[Judicially noticed newspaper articles] serve only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.").

And third, even if MeridianLink had submitted a proper request for judicial notice, MeridianLink's press release states (consistently with the allegations in the FAC) that the StreetShares acquisition was complete on April 1, 2022, and not in March 2022, as MeridianLink incorrectly asserts in its motion.

*Id.*, Ex. 3 at 6; *see Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (when analyzing a Rule 12(b)(6) motion, courts "can consider documents attached to the complaint"). Incredibly, in its Motion MeridianLink nonetheless asserts that it is "not a signatory . . . to the Order Forms." MeridianLink MTD 4.

All three order forms—the original and amended versions of Order Form No. 1 and Order Form No. 2—incorporate certain Terms of Service by reference, with each order form providing that if its terms conflict with the Terms of Service, the order form's terms control. FAC ¶ 4, Ex. 1 at 6, Ex. 2 at 4, Ex. 3 at 4 (incorporating language from Order Form No. 1). StreetShares attached a version of the Terms of Service to its Answer and Counterclaims to Live Oak Bank's FAC, StreetShares Answer, D.I. 44, Ex. A. This is not the version of the Terms of Service that was in effect when Live Oak Bank, StreetShares, and MeridianLink entered into the Order Forms. Nonetheless, even the version attached by StreetShares includes an assignment provision that allows each party to unilaterally assign its rights and obligations under the Order Forms in connection with a corporate merger or acquisition, allows any such successor to enjoy the benefits of the Order Forms, and binds any successor such as MeridianLink to the terms of the Order Forms:

> **(d) Assignment.** Neither party may assign any of its rights or obligations under the Agreement, whether by operation of law or otherwise, without the prior written consent of the other party (not to be unreasonably withheld). Notwithstanding the foregoing, either party may assign the Agreement in its entirety (including all Order Forms), without consent of the other party, to its affiliate or in connection with a merger, acquisition, corporate reorganization, or sale of all or substantially all of its assets. Any permitted assignment pursuant to this Section will not relieve the assigning party from its obligations under this Agreement. Subject to the foregoing, the Agreement will bind and inure to the benefit of the parties, their respective successors and permitted assigns.

StreetShares Answer, D.I. 44, Ex. A at 29. The version of the Terms of Service filed by StreetShares states at the top of the first page that "[t]he StreetShares Atlas Platform is [n]ow MeridianLink Business" and includes a MeridianLink logo. *Id.* at 1, 32. Thus, StreetShares admits that MeridianLink took over its Atlas Platform, entirely undercutting MeridianLink's arguments that it is not a proper party.

Following MeridianLink's acquisition of StreetShares, MeridianLink's employees (including its executives) became involved in the Live Oak Bank project. FAC ¶¶ 21, 41. MeridianLink replaced some of the StreetShares employees working on the project with MeridianLink employees, and StreetShares employees who remained on the project began routinely corresponding with Live Oak Bank using MeridianLink email addresses. *Id.* ¶ 21; *see, e.g.*, *id.* ¶ 40 (email from Live Oak Bank to "Meridian Link team" regarding project problems); *id.* ¶ 41 (email from Live Oak Bank to MeridianLink noting failures of MeridianLink's senior leadership in connection with the Live Oak Bank project).

Consistent with its role as a successor-in-interest who accepted and was enjoying the benefits of the Order Forms, MeridianLink directly invoiced Live Oak Bank for work purportedly performed under the Order Forms. StreetShares attached six of these invoices, covering a four-

month period from September 2022 through January 2023, to its Answer and Counterclaims to Live Oak Bank's FAC StreetShares Answer, Ex. B; *see also* FAC ¶ 21. Each of these invoices is on MeridianLink letterhead containing a MeridianLink mailing address:



PO Box 846822
Los Angeles, CA 90084-6822
(714) 662-9526
Email:accountsreceivable@meridianlink.com

Invoice
#2629769
9/30/2022
**Customer ID** 3513305

StreetShares Answer, Ex. B. at 2; *see also* FAC ¶ 21. Each also directs invoice-related questions to a MeridianLink email address for MeridianLink accounts receivable:

If you have any questions regarding your invoice, please contact accountsreceivable@meridianlink.com.
1 of 1

StreetShares Answer, Ex. B. at 2; *see also* FAC ¶ 21.

After months of problems and broken promises to fix them, Live Oak Bank finally decided to terminate its contractual relationship with StreetShares (and now MeridianLink) under the terms of the Order Form. Accordingly, in October 2022 Live Oak Bank sent a letter to the StreetShares legal department, copying a MeridianLink executive. FAC ¶ 45, Ex. 4. The response Live Oak Bank received was not from StreetShares—instead, MeridianLink responded, demanding full payment under the agreements. *Id.* ¶ 46. In several other pre-litigation communications, MeridianLink explicitly held itself out as StreetShares' successor-in-interest for the purposes of the Order Forms. *Id.* ¶ 22, 31.

Live Oak Bank filed a FAC asserting four claims: (1) declaratory judgment, (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; and (4) unjust enrichment. *Id.* ¶¶ 49–70. The declaratory judgment claim seeks a judicial declaration that the

terms of the contracts are as alleged by Live Oak Bank, that both StreetShares and MeridianLink are parties to the contracts, the contracts are terminated, and Live Oak Bank owes no further payments to either StreetShares or MeridianLink. *Id.* ¶ 53. This claim does not replicate the breach of contract claim, which alleges that Defendants breached the explicit terms of the Order Forms in numerous ways. *See id.* ¶ 57. The breach of the implied covenant claim also does not replicate the breach of contract claim as it alleges that StreetShares and MeridianLink breached implied obligations underpinning the contractual terms regarding the capability to timely deliver a functional automated loan processing platform. *Id.* ¶ 60–63. The unjust enrichment claim is alleged in the alternative, which is permissible at the pleading stage, and demands return of the amount paid by Live Oak Bank to StreetShares and MeridianLink. *Id.* ¶¶ 66–70.

In addition to answering the FAC, StreetShares asserted five counterclaims: (1) declaratory judgment; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) anticipatory breach, and (5) unjust enrichment. StreetShares Answer ¶ 71–98.

<u>Discussion</u>

**I.    MeridianLink is a proper defendant because MeridianLink's own words and actions—including MeridianLink's assumption of contractual obligations, work on the Live Oak Bank project, invoicing of Live Oak Bank, and response to pre-litigation correspondence sent to StreetShares—show that it assumed the obligations of and is StreetShares' successor-in-interest.**

Having formerly sought to enforce the contracts at issue, paradoxically MeridianLink now seeks to escape them by claiming, in direct contravention of the facts alleged in the FAC, that it is not a proper party to this lawsuit. It does so by asserting three arguments: (1) MeridianLink does not have a direct contractual relationship with Live Oak Bank because it is not a named party or signatory to the contracts, (2) Live Oak Bank has not properly alleged an alter ego or veil-piercing theory, and (3) MeridianLink is not a successor-in-interest to StreetShares. The first argument and

second arguments are irrelevant, while the third argument is contradicted by MeridianLink's actions as set forth in the FAC. MeridianLink is properly a part of this dispute.

### a. MeridianLink need not have a "direct" contractual relationship with Live Oak Bank.

MeridianLink's assertion that it is not a party to the contracts such that it should be dismissed from this case is neither transparent nor relevant. As an initial matter, MeridianLink fails to mention that following MeridianLink's acquisition of StreetShares, MeridianLink's CEO—rather than a StreetShares executive, as had previously been the case—signed one of the contracts at issue, Amended Order Form No. 1. Given this fact, MeridianLink cannot credibly assert that it was not an original contracting party to at least this amendment to the contracts and the FAC also establishes that MeridianLink thereafter sought to enforce the terms of the contracts in its own name. *See* FAC ¶ 22.

In any case, MeridianLink is correct to note that "[i]t is a *general* principle of contract law that only a party to a contract may be sued for breach of that contract." *See* MeridianLink MTD (quoting *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999) (emphasis added)). But "general" is an important qualifier that MeridianLink ignores, and the FAC establishes that MeridianLink's conduct departed from the general principal. "[W]hen one accepts the benefits of a contract he is bound by equity to be held to the terms of the contract." *Hillard v. Guidant Corp.*, 37 F. Supp. 2d 379, 381 (M.D. Pa. 1999). As discussed below, MeridianLink assumed obligations under the contracts and even sought to enforce their terms by invoicing Live Oak Bank, responding to pre-litigation communications that Live Oak Bank sent to StreetShares, and demanding payment under the contracts.

> b. **Live Oak Bank alleges that MeridianLink is liable under a successor-in-interest theory that is recognized under both Delaware law and the contract language.**

MeridianLink spends a considerable portion of its motion to dismiss arguing that Live Oak Bank has not adequately alleged that the corporate veil should be pierced or that an agency relationship exists under which MeridianLink can be held liable for StreetShares' actions. This conflates distinct theories of liability: two theories that Live Oak Bank has not alleged at this time—veil-piercing and agency—with theories that Live Oak Bank has directly alleged, successor liability and assumption of the contracts. Delaware law recognizes successor liability. *See* 8 *Del. C.* § 259. The applicable contracts do too. As noted earlier, the Order Forms incorporate by reference Terms of Service posted on StreetShares' website. The version of the Terms of Service attached to StreetShares' Answer and Counterclaims to Live Oak Bank's First Amended Complaint includes an assignment clause that explicitly recognizes the continued contractual liability a successor would have following a merger or acquisition. StreetShares Answer, Ex. A at 29. Further, the FAC alleges that MeridianLink inserted itself into the contracts, assumed obligations thereunder, and may not now divorce itself from its own conduct.

> c. **As alleged in the FAC, by its actions and words MeridianLink has shown that it is StreetShares' successor-in-interest.**

MeridianLink is StreetShares' successor-in-interest. This is clear from MeridianLink's post-acquisition actions as alleged in the FAC. Following MeridianLink's acquisition of StreetShares, MeridianLink's CEO signed Amended Order Form No. 1, rather than the StreetShares president who had executed Order Form Nos. 1 and 2. *Compare* FAC Ex. No. 1 at 6 and Ex. 2 at 4, *with* Ex. No. 3 at 5. MeridianLink employees also replaced some of the StreetShares employees that had worked on the Live Oak Bank project. FAC ¶¶ 21, 40. These newly assigned employees—along with the previous StreetShares team members that remained—corresponded

10

with Live Oak Bank from MeridianLink email addresses and undertook obligations on behalf of MeridianLink under the contracts. *Id.* MeridianLink's senior executives also became involved. *Id.* ¶ 21. While StreetShares had previously issued invoices for work performed, MeridianLink took over following the acquisition, invoicing Live Oak Bank using letterhead with MeridianLink's logo and directing Live Oak Bank to ask any billing-related questions to MeridianLink's accounts receivable, not StreetShares. *Id.* ¶¶ 21. And when Live Oak Bank sent a letter to StreetShares providing notice of termination of the contract, MeridianLink responded—not StreetShares. FAC ¶¶ 45–46, Ex. 4. MeridianLink's words confirmed what its actions already showed: MeridianLink was StreetShares' successor-in-interest under the contracts. As alleged in the FAC, on multiple occasions MeridianLink explicitly stated so in communications with Live Oak Bank. *Id.* ¶ 22, 31. Additionally, by its conduct, MeridianLink expressly assumed obligations under the contracts and sought to enforce contractual rights under the contracts. It cannot now disavow its own conduct.

MeridianLink's new post-litigation position—that it is not a successor-in-interest to StreetShares under the contracts—is perplexing and raises a host of factual questions that are not appropriately addressed at the motion to dismiss stage. Key among these, MeridianLink somewhat shockingly asserts that Live Oak Bank "of course had no . . . obligation to MeridianLink" to pay for "work to be performed under" Order Form No. 2. MeridianLink MTD at 9 n.7. If that is the case and MeridianLink is not StreetShares' successor-in-interest, why did MeridianLink issue invoices to Live Oak Bank for this work and seek to enforce the contracts? And why did MeridianLink accept payments in response to those invoices? At a minimum, this Court should recognize the troubling inconsistencies between what MeridianLink did and the inconsistent facts it impermissibly urges this Court to take up to excuse it from this lawsuit.

II.    **Live Oak's claims for declaratory judgment, breach of the implied covenant of good faith and fair dealing, and unjust enrichment are distinct from the breach of contract claim and sufficiently pled.**

Defendants concede that Live Oak Bank's breach of contract claim is adequately pled but challenge Live Oak Bank's claims for (1) declaratory judgment; (2) breach of the implied covenant; and (3) unjust enrichment as purportedly duplicative of the breach of contract claims. As an initial matter, this position is puzzling, given that StreetShares has itself asserted a breach of contract claim based on the same general facts, and has also asserted claims for declaratory judgment, breach of the implied covenant, and unjust enrichment (plus a claim for anticipatory breach). StreetShares and MeridianLink have made no effort to explain why Live Oak Bank's claims are impermissibly duplicative, but StreetShares' breach of contract claim can peacefully coexist with its other claims. In any case, StreetShares' duplication arguments are inconsistent with the allegations in the FAC that carefully plead key distinctions between breaches of the contractual terms and other facts underpinning the other claims.

a.    **Live Oak Bank's declaratory judgment claim addresses distinct issues from the breach of contract claim and it is premature to determine otherwise.**

Live Oak Bank's declaratory judgment claim is not duplicative of its breach of contract claim. "Although a court has discretion to decline to adjudicate a declaratory judgment action over which it has jurisdiction, a court should *only* exercise such discretion if it determines that issuing a declaratory judgment would serve *no* useful purpose." *Aluminum Co. of Am. v. Beazer E., Inc.*, 124 F.3d 551, 560 (3d Cir. 1997) (emphases added). Here, the breach of contract claim is entirely useful because it will address Defendants' failure to satisfy the explicit terms of the parties' contract. The declaratory judgment will address other issues related to this dispute, including the sufficiency of Live Oak Bank's termination of the contracts. *See* FAC ¶ 53 (identifying issues on which Live Oak Bank seeks declaratory judgment).

Defendants' argument to the contrary relies almost entirely on a single unpublished district court case, *JJCK, LLC v. Project Lifesaver International*, No. CIV. 10-930-LPS, 2011 WL 2610371 (D. Del. July 1, 2011). But *JJCK* itself acknowledges that a court is within its discretion to dismiss even when the declaratory judgment claim "bears 'complete identity of factual and legal issues' with another claim being adjudicated by the parties. *Id.* at *6. It is too early in this lawsuit to conclude whether the breach of contract will sufficiently remedy Live Oak Bank's harm in this case. *See Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 139 (E.D. Pa. 2007) (holding that a motion to strike a declaratory relief claim during the pleadings stage was "premature"). StreetShares' and MeridianLink's arguments to the contrary ring hollow, particularly when looking at StreetShares' own scantly pled declaratory judgment claim (which StreetShares and MeridianLink presumably believe is sufficient).

> b.     **Live Oak Bank's breach of the implied covenant claim centers on Defendants' implied obligation to provide a functioning automated underwriting platform in a timely manner.**

Live Oak Bank's claim for breach of the implied covenant of good faith and fair dealing is sufficiently pled. Under Delaware law, a breach of the implied covenant claim "must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 888 (Del. Ch. 2009). In essence, a breach of implied covenant claim "supplies terms to fill gaps in the express provisions of a specific agreement." *Allen v. El Paso Pipeline GP Co.*, 113 A.3d 167, 182 (Del. Ch.), *judgment entered*, (Del. Ch. 2014), *aff'd*, No. 399, 2014, 2015 WL 803053 (Del. Feb. 26, 2015). That is exactly what Live Oak Bank does here, highlighting implied obligations that underpin the contracts and are separate from the specific contractual terms.

13

Here, Live Oak Bank alleges that it was implied that StreetShares (and later, MeridianLink) had the capability to and would timely provide Live Oak Bank with a "functioning automated underwriting platform" that could "reduce Live Oak Bank's loan approval process" for Next Generation credit loans "from days to minutes." FAC ¶¶ 60–61. As part of that implied promise, StreetShares and MeridianLink would provide the requisite engineering information and employee competence needed to satisfy the purpose of the contract in a timely fashion. None of these implied obligations are express contractual terms in the order forms, and yet each is necessary to achieve the contracts' intended, mutually agreed upon purpose.

Live Oak Bank's breach of the implied covenant claim is thus distinguishable from the claims that duplicate express contract terms in the case law cited by Defendants. This is not a claim "premised on the failure of defendants to pay money due under the contract" or some other claim where "the express terms of the contract will control." *Kuroda*, 971 A.2d at 888. Nor is it a claim where Live Oak Bank seeks to change the express terms" or "override express provisions of a contract." *Davis v. BAC Home Loans Serv., LP*, No. 21-1713-CFC, 2022 WL 4535623, at *7 (D. Del. Sept. 28, 2022); *Kuroda*, 971 A.2d at 888. This case is also not at the summary judgment stage, as some of Defendants' authority addresses. *See, e.g.*, *Hydrogen Masters Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 328 (D. Del.). Live Oak Bank has adequately alleged a distinct basis for its breach of the implied covenant claim apart from the express terms of the contracts, precluding dismissal.

### c.    Live Oak Bank's unjust enrichment claim is properly pled in the alternative.

Live Oak Bank has also properly pled its claim for unjust enrichment. Under Delaware law, "[u]njust enrichment is in essence a gap-filling remedy, which can be sought in the absence of a remedy provided by law." *US Ecology, Inc. v. Allstate Power Vac, Inc.*, C.A. No. 2017-0437-

14

AGB, 2018 WL 3025418, at *8 (Del. Ch. June 18, 2018) (quotations and citations omitted). Courts have recognized that determining whether such gap-filling is needed at the pleadings stage "is not worth the candle"—it is too challenging to determine whether or not there is an absence of some other remedy so early on. *Garfield v. Allen*, 277 A.3d 296, 362 (Del. Ch. May 24, 2022) (Laster, V.C.). For this reason, courts routinely allow parties to plead a claim for unjust enrichment in the alternative to a breach of contract claim. *See, e.g.*, *Great Hill Equity Partners IV v. SIG Growth Equity Fund I, LLLP*, C.A. No. 7906-VCG, 2014 WL 6703980, at *27 (Del. Ch. Nov. 26, 2014) ("In some situations, . . . both a breach of contract and an unjust enrichment claim may survive a motion to dismiss when pled as alternative theories of recovery.'").

This is precisely what Live Oak Bank has done here. It explicitly pled its unjust enrichment in the alternative. FAC 19 ¶ 4. In doing so, Live Oak Bank accounts for the potential gaps in the contract that may need to be addressed later, such as the timing of delivery and the scope of the promised performance. While it is possible that Live Oak Bank "may ultimately be prevented from recovering under one or more of these theories, it is permitted, at this stage in the litigation, to plead its claims in the alternative."

Indeed, pleading unjust enrichment in the alternative seems particularly appropriate in light of Defendants' allegations, including their claims that "it is not relevant for the purposes of this motion" whether StreetShares or MeridianLink provided a functioning product to Live Oak Bank. StreetShares MTD 2; MeridianLink MTD 1. At this stage, the Court must give credence to Live Oak Bank's specific allegations that they did not provide a working product. Further, MeridianLink also states that Live Oak Bank "of course had no . . . obligation to MeridianLink" to pay for "work to be performed under" Order Form No. 2, but MeridianLink nonetheless billed and accepted payment from Live Oak Bank. MeridianLink MTD at 9 n.7. Again, the Court must

give credence to Live Oak Bank's specific allegations at this stage. Put differently, Defendants seem to suggest that regardless of whether they provided the promised working automated loan approval platform to Live Oak Bank, Live Oak Bank still owed StreetShares the full contract amount, and even though MeridianLink demanded and accepted money from Live Oak Bank, it purportedly was never a party to the contracts and thus, in MeridianLink's eyes, Live Oak Bank did not owe it anything. For all these reasons, this Court should follow the approach set out by other courts and retain—at least for now—Live Oak Bank's alternative claim for unjust enrichment.

### III.   Leave to Amend Is Appropriate Should the Court Grant Either Motion to Dismiss in Part or Whole.

In sum, each of Live Oak Bank's non-breach-of-contract claims is adequately pled. Nonetheless, should the Court grant Defendants' motions in part or whole, Live Oak Bank respectfully requests leave to file an amended complaint. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—[such] leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15); *see also USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004). Here, none of these reasons exist.

The only arguments StreetShares and MeridianLink make relate to futility. In a one-sentence argument, MeridianLink conclusorily asserts that Live Oak Bank cannot plead that (1) Live Oak Bank has a contractual relationship with MeridianLink; (2) Live Oak Bank cannot plead a theory that makes MeridianLink responsible for contracts of StreetShares; and (3) none of Live Oak Bank's claims against MeridianLink can survive without a contractual relationship between

the two companies. This is demonstrably false based on the allegations of the FAC. Construing the FAC in the light most favorable to Live Oak Bank as is required, the first assertion is incorrect—MeridianLink's CEO signed Amended Order Form No. 1 and MeridianLink acted and said it was StreetShares' successor-in-interest as to the contracts. The second assertion is also incorrect, as Live Oak Bank alleged that MeridianLink was StreetShares' successor-in-interest and assumed obligations under the contracts. And the third assertion is a false statement of the law—MeridianLink's own motion acknowledges situations in which the claims asserted against MeridianLink can exist absent a direct contractual relationship. *See* MeridianLink MTD at 18–19.

Although it should be unnecessary, Live Oak Bank can assert additional facts. This includes but is not limited to additional allegations about MeridianLink's work on the Live Oak Bank project and payments demanded by, made to, and accepted by MeridianLink. Live Oak Bank can also include allegations that pre-litigation communications unambiguously stated that MeridianLink entered into the contracts at issue as StreetShares' successor-in-interest. Live Oak Bank can also add allegations that during these pre-litigation communications, MeridianLink's counsel of record stated that the notice of breach sent by Live Oak Bank was purportedly ineffective because it was not sent to MeridianLink's headquarters.

As for StreetShares, its argument regarding amendment is an even shorter and more conclusory single sentence: it argues that "[i]t is clear here that an amendment could not resolve [Live Oak Bank's] pleading deficiencies because [the claims discussed above] are all duplicative of [Live Oak Bank's] breach of contract claim." StreetShares MTD at 11. Live Oak Bank disagrees, but if the Court holds that more is necessary, Live Oak Bank can amend its complaint to better distinguish its non-breach-of-contract claims.

## <u>Conclusion</u>

For the foregoing reasons, Defendants' motions to dismiss must be denied in their entirety.

To the extent the Court does grant either motion in whole or part, Live Oak Bank respectfully

requests leave to file an amended complaint that addresses any issues identified by the Court.


Dated: June 21, 2023

**OF COUNSEL:**

Isabelle L. Ord (admitted *pro hac vice*)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
(415) 836-2500
isabelle.ord@us.dlapiper.com

Akhil Sheth (admitted *pro hac vice*)
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067-4704
(310) 595-3000
akhil.sheth@us.dlapiper.com

**DLA PIPER LLP (US)**

*/s/ Michelle L. Morgan*
Michelle L. Morgan (DE Bar No. 3651)
Kelly L. Freund (DE Bar No. 6280)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
(302) 468-5700
(302) 394-2341 fax
michelle.morgan@us.dlapiper.com
kelly.freund@us.dlapiper.com

*Attorneys for Plaintiff*
*Live Oak Banking Company*