IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIVE OAK BANKING COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. 1:23-cv-00332-JLH-SRF |
| STREETSHARES, INC., AND MERIDIANLINK, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Before the court in this breach of contract action are two motions to dismiss Plaintiff Live Oak's (hereinafter "Live Oak") First Amended Complaint (D.I. 38) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim brought by Defendants StreetShares, Inc. (hereinafter "StreetShares") (D.I. 45)[1] and MeridianLink, Inc. (hereinafter "MeridianLink") (D.I. 47).[2]  For the reasons that follow, the court recommends that MeridianLink's motion to dismiss Count II be **DENIED** and StreetShares and MeridianLink's motions to dismiss Counts I, III, and IV be **GRANTED**.

**I.     BACKGROUND**

Live Oak is a North Carolina banking services company with its principal place of business in North Carolina. (D.I. 38 (hereinafter "FAC") at ¶ 18)  StreetShares is a Delaware financial technology corporation with its principal place of business in Virginia. (*Id.* at ¶ 19)  MeridianLink is a Delaware corporation and digital lending platform with its principal place of

---

[1] The briefing submitted for this motion can be found at D.I. 46, D.I. 52, and D.I. 54.
[2] The briefing submitted for this motion can be found at D.I. 48, D.I. 52, and D.I. 55.

1

business in California. (*Id.* at ¶ 20) Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332. (*Id.* at ¶ 11)

In 2021, Live Oak entered into a contractual relationship with StreetShares. (*See id.* at ¶ 26) Live Oak's business involves review and underwriting of small business loan applications. (*Id.* at ¶ 23) Live Oak wanted to automate and expedite its processing of the loan applications through a customized digital platform, which was to be built and implemented by StreetShares. (*Id.* at ¶¶ 24–26)

On September 3, 2021, Live Oak and StreetShares signed the first contract for StreetShares to create the product using its Atlas Platform. (*Id.* at ¶ 26; *see also* D.I. 38-1 (hereinafter "Order Form No. 1")) Live Oak contracted to pay StreetShares $675,000.00 to create the platform, broken down into four installments of $75,000.00, totaling $300,000.00, and an additional $300.00 for each loan application processed with a minimum commitment of 1,250 applicants. (FAC at ¶ 30) On March 24, 2022, StreetShares and Live Oak executed a second contract, which set out a development and delivery timeline. (*Id.* at ¶¶ 28–29; *see also* D.I. 38-2 (hereinafter "Order Form No. 2"))

In April of 2022, MeridianLink acquired StreetShares.[3] (FAC at ¶ 31) Live Oak avers that MeridianLink thereafter assumed performance of Order Forms Nos. 1 and 2. (*E.g., id.* at ¶ 6) MeridianLink employees replaced some of the StreetShares employees that had worked on the Live Oak project, and those that remained began to use MeridianLink email addresses. (*Id.* at ¶ 21) Live Oak also received invoices on MeridianLink letterhead to collect payment on the contracts. (*Id.*)

---

[3] The exact date is disputed by the parties in their briefing, (*see* D.I. 46 at 2; D.I. 52 at 4), but Live Oak avers it occurred on April 1, 2022. (FAC at ¶ 20)

2

On July 28, 2022, the parties amended the terms of Order Form No. 1 through Amended Order Form No. 1. (*Id.* at ¶¶ 32–33; *see also* D.I. 38-3 ("Amended Order Form No. 1" and collectively with Order Form No. 2, the "Order Forms")) The anticipated timeline agreed upon in Order Form No. 2 was not altered. (*See* FAC at ¶ 33) MeridianLink's CEO, Nicolaas Vlok, signed Amended Order Form No. 1. (D.I. 38-3 at 6–7; D.I. 52 at 4–5)

StreetShares allegedly did not meet the agreed-upon launch date in June of 2022. (FAC at ¶ 34) The platform reviewed its first loan application on August 26, 2022, and it allegedly did not function as intended. (*Id.*) Live Oak and Defendants continued to correspond regarding the creation of a functional product throughout September and October of 2022. (*Id.* at ¶¶ 39–41) The digital loan processing platform allegedly failed to review a loan application without human input. (*Id.* at ¶ 46)

On October 26, 2022, Live Oak provided Defendants with written notice of Defendants' alleged material breaches of the Order Forms and that Live Oak intended to terminate the Order Forms pursuant to the procedure outlined in their Terms and Conditions:

> [E]ither party may terminate the Agreement upon written notice in the event that the other party materially breaches the Agreement, . . . if the breaching party has failed to cure such material breach (or has failed to commence diligent efforts to cure such breach that are reasonably acceptable to the non-breaching party) within sixty (60) days after receiving written notice thereof from the non-breaching party.

(*Id.* at ¶¶ 44–45)[4] In response, MeridianLink demanded that Live Oak pay the balance remaining on the Order Forms. (*Id.* at ¶ 46) After giving Defendants sixty (60) days to cure their material

---

[4] The termination clause is recited in the FAC but is not found in the attached Order Forms. (FAC at ¶ 44; *see* D.I. 38-1; D.I. 38-2; D.I. 38-3) Rather, the Order Forms state that they are "subject to the Atlas Platform Standard Terms of Service" and direct the reader to a website link ostensibly listing the terms, but the link brings the user to the MeridianLink homepage. (*See* D.I. 38-1 at 7 (directing viewers to https://streetsharesplatform.com/atlas-terms-of-service/)) For purposes of a Motion to Dismiss, the court accepts as true the contractual terms recited in the FAC. (*See* FAC at ¶ 44); *see also Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

3

breaches, Live Oak terminated the Order Forms on January 3, 2023. (*Id.* at ¶ 47) Defendants retained Live Oak's payments up to that point totaling $150,000.00. (*Id.* at ¶ 68)

Live Oak filed this action on March 24, 2023, and filed the FAC on May 17, 2023. (D.I. 1; D.I. 38) The FAC asserts four Counts: Count I seeks a declaratory judgment of the parties' respective rights and obligations under the Order Forms; Count II asserts a breach of contract claim; Count III asserts breach of the implied covenant of good faith and fair dealing; and Count IV asserts unjust enrichment based upon Defendants' alleged retention of payments under the contracts in issue. (D.I. 38)

On June 7, 2023, StreetShares filed its answer and counterclaims against Live Oak. (D.I. 44) StreetShares seeks a declaratory judgment and alleges breach of contract, breach of the implied covenant of good faith and fair dealing, anticipatory breach of contract, and unjust enrichment against Live Oak. (*Id.*)

On the same date, Defendants filed the present motions to dismiss. (D.I. 45; D.I. 47) StreetShares seeks to dismiss Counts I, III, and IV. (D.I. 45) MeridianLink moves to dismiss the breach of contract claim in Count II on the basis that it is not a contracting party and joins in StreetShares' motion to dismiss the remaining Counts. (*See* D.I. 48) The motions were fully briefed on June 28, 2023, and are ripe for review. (*See* D.I. 54; D.I. 55) This case was referred to the undersigned Magistrate Judge by the District Judge on January 24, 2024. (D.I. 67)

## II.   LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

4

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring it "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

### A. Breach of Contract against MeridianLink (Count II)

"In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

MeridianLink argues that Count II of the FAC should be dismissed because (1) it did not enter into a contractual relationship with Live Oak; (2) it cannot be held liable under an alter ego or agency theory; and (3) the FAC does not allege sufficient facts to support a claim of successor liability against it. (D.I. 48 at 5–10)

### 1. MeridianLink's Contractual Liability

Live Oak contends that the FAC plausibly alleges that MeridianLink is a contracting party because it executed Amended Order Form No. 1, thus assuming liability under the contracts. (D.I. 52 at 9; *see also* FAC at ¶ 32) MeridianLink admits in its reply brief that Amended Order Form No. 1 was signed by Nicolaas Vlok, who essentially wears two hats as President of StreetShares and CEO of MeridianLink. (D.I. 55 at 4, 4 n.4) Whether Vlok signed Amended Order Form No. 1 in his capacity as an officer of StreetShares or of MeridianLink is a question of fact not appropriate for the court to resolve at this stage of the case.

At this stage of the proceedings, the court must view plausible allegations in the FAC in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). Therefore, it is plausibly alleged that MeridianLink entered into and breached a contract with Live Oak.

### 2. Liability Under an Alter Ego or Agency Theory

"Under the alter ego or piercing the corporate veil doctrine, courts will ignore the corporate boundaries between parent and subsidiary if fraud or inequity is shown. The agency theory . . . examines the degree of control which the parent exercises over the subsidiary." *Applied Biosystems, Inc. v. Cruachem*, 772 F. Supp. 1458, 1463 (D. Del. 1991) (citations omitted).

6

MeridianLink has moved to dismiss theories of liability that Live Oak contends it has not asserted in the FAC. (*See* D.I. 48 at 8–10; D.I. 52 at 10) The FAC does not allege that MeridianLink should be found liable as the alter ego and/or agent of StreetShares. (*See* FAC) Plaintiff correctly points out that its theory of liability against MeridianLink, as alleged in the FAC, is based upon assumption of the contracts and successor liability. (D.I. 52 at 10; *e.g.*, *id.* at ¶ 14)

MeridianLink does not refute Live Oak's assertions that no such theories have been averred in the FAC in its reply brief. (*See* D.I. 55) Therefore, the court considers these arguments withdrawn. *Progressive Sterilization, LLC v. Turbett Surgical LLC*, 2020 WL 3071951, at *2 (D. Del. June 10, 2020) (noting that "a court may rightly conclude that the party implicitly conceded" points made in an answering brief unaddressed by the reply brief).

### 3. Successorship Liability

"[A] plaintiff's claim of successorship liability is satisfied by general allegations of successorship" and are subject to Rule 8(a). *Premier Pork LLC v. Westin, Inc.*, 2008 WL 724352, at *4 (D.N.J. Mar. 17, 2008); *see also Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 376 (S.D.N.Y. 1997). "The general rule of successorship liability is really one of nonliability. . . . [A] company which purchases the assets of another company will not ordinarily be held liable for the debts of the seller." *Premier Pork LLC*, 2008 WL 724352, at *4. There are four exceptions to the general rule of nonliability: "(1) where there is an express or implied agreement that the buyer will assume the liabilities of the seller; (2) where the transaction amounts to a consolidation or merger of the buyer and seller; (3) where the buyer is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." *Id.*

7

MeridianLink argues that the averments in the FAC are insufficient to assert that it acted as StreetShares' successor-in-interest to the Order Forms. (D.I. 48 at 10) Live Oak argues that MeridianLink's post-acquisition conduct shows that it meant to assume StreetShares' contractual obligations to Live Oak. (D.I. 52 at 10–11)

The court recommends that the FAC avers sufficient factual support to hold MeridianLink liable as StreetShares' successor-in-interest to the Order Forms at the motion to dismiss stage. Specifically, after MeridianLink acquired StreetShares, the FAC avers that MeridianLink employees became involved in the day-to-day communications and work flow with Live Oak regarding the loan processing project, and former StreetShares employees began to use MeridianLink email addresses. (FAC at ¶ 21) MeridianLink directly invoiced Live Oak for work performed pursuant to the Order Forms. (*Id.*) When Live Oak terminated the Order Forms due to StreetShares and MeridianLink's alleged material breaches, MeridianLink demanded the remaining payments. (*Id.* at ¶ 46)

Thus, the facts in the FAC plausibly assert that MeridianLink assumed StreetShares' liabilities under the Order Forms.[5]

---

[5] In its answering brief, Live Oak avers that the Atlas Platform's Terms and Conditions contained a provision wherein the obligations of a signatory would be assigned in the event of a merger or acquisition. (D.I. 52 at 5–6) This provision was not discussed in the FAC, and Live Oak cites a version of the Atlas Platform's Terms and Conditions that was not in effect when the Order Forms were signed. (*See id.*) Therefore, this was not considered by the court in resolving the pending motion. *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) ("[I]t is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

### B. Counts Defendants Jointly Move to Dismiss

#### 1. Declaratory Judgment (Count I)

The Declaratory Judgment Act gives federal courts authority to grant declaratory relief in "case[s] of actual controversy." 28 U.S.C. § 2201(a); *see also Wyatt, V.I., Inc. v. Gov't of V.I.*, 385 F.3d 801, 805 (3d Cir. 2004).

District courts have discretion to dismiss a claim for declaratory judgment if such relief would serve no useful purpose. *Christiana Care Health Servs., Inc. v. PMSLIC Ins. Co.*, 2015 WL 6675537, at *5–6 (D. Del. Nov. 2, 2015). A declaratory judgment claim would serve no useful purpose if the dispute would be resolved by another claim in the case. *Id.*; *JJCK, LLC v. Project Lifesaver Int'l*, 2011 WL 2610371, at *6 (D. Del. July 1, 2011). "If the declaratory judgment claim bears 'complete identity of factual and legal issues' with another claim being adjudicated by the parties, the Court is within its discretion to dismiss the declaratory judgment action." *JJCK, LLC*, 2011 WL 2610371, at *6 (quoting *Aldens, Inc. v. Packel*, 524 F.2d 38, 51 (3d Cir. 1975)). Moreover, "'[a] declaratory judgment is inappropriate solely to adjudicate past conduct.'" *Christiana Care*, 2015 WL 6675537, at *5 (alterations in original) (quoting *Del. State. Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374 (D. Del. 2008)).

Defendants argue that Count I of the FAC should be dismissed because it is duplicative of Live Oak's breach of contract claim and thus serves no useful purpose. (D.I. 46 at 5–6; D.I. 48 at 11–12) Live Oak argues that its declaratory judgment claim addresses distinct issues from the breach of contract claim and that dismissal of its declaratory judgment claim at the pleadings stage is premature. (D.I. 52 at 12–13)

9

The court recommends that Defendants' motion to dismiss Count I be granted because it would resolve the same factual and legal issues that will be adjudicated in Live Oak's breach of contract claim. Live Oak seeks a declaration that (1) the relevant terms of the Order Forms are as alleged by Live Oak, (2) that Defendants breached the Order Forms, (3) that Live Oak fully performed until it terminated the Order Forms, and (4) that the Order Forms are terminated and Live Oak owes no further payments to Defendants. (FAC at ¶ 53; *see also id.*) All four of these allegations must be determined in order to resolve Live Oak's breach of contract claim. *JJCK, LLC*, 2011 WL 2610371, at *6 (dismissing the plaintiff's request for a declaration that it properly terminated the contract at issue because it would "necessarily be decided in resolving the breach of contract claims[.]").

Moreover, Live Oak's declaratory judgment claims solely concern past conduct. (*See* FAC at ¶ 53) Thus, a declaratory judgment would not resolve issues beyond the contract dispute. (*See id.*); *see also Christiana Care*, 2015 WL 6675537, at *6 (dismissing a declaratory judgment claim because "the conduct alleged already occurred and there [was] no way for any party to conform its conduct to the declaration that the Complaint seeks.").

Therefore, the court finds that Live Oak's request for declaratory judgment serves no useful purpose and accordingly recommends that Defendants' motion to dismiss Count I pursuant to Rule 12(b)(6) for failure to state a claim be **GRANTED**.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III)

"Every contract governed by Delaware law is subject to the implied covenant of good faith and fair dealing." *Truinject Corp. v. Nestlé Skin Health, SA*, 2020 WL 70981, at *13 (D. Del. Jan. 7, 2020), *report and recommendation adopted*, 2020 WL 1270916 (D. Del. Mar. 17, 2020). "The implied covenant 'requires a party in a contractual relationship to refrain from

arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.'" *Id.* (quoting *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *3 (Del. Ch. Jan. 30, 2015) (quotation marks omitted)).

"To plead a claim for breach of the implied covenant 'a litigant must allege a specific obligation implied in the contract, a breach of that obligation, and resulting damages.'" *Zinetti v. Deutsche Bank Nat'l Tr. Co.*, 2020 WL 409725, at *10 (D. Del. Jan. 24, 2020) (quoting *Fortis Advisors*, 2015 WL 401371, at *3), *report and recommendation adopted*, 2020 WL 1536092 (D. Del. Feb. 14, 2020). "[T]he implied covenant only applies where a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purposes reflected in the express language of the contract." *Alliance Data Sys. Corp. v. Blackstone Cap. Partners V L.P.*, 963 A.2d 746, 770 (Del. Ch. 2009), *aff'd*, 976 A.2d 170 (Del. 2009).

Defendants argue that the implied contractual duties alleged by Live Oak are covered by express contractual terms in the Order Forms and Live Oak has not alleged that Defendants acted in bad faith. (D.I. 46 at 6–8; D.I. 48 at 13–15) Live Oak argues that Defendants breached an implied promise to timely deliver the automated loan-processing platform by failing to provide adequate "employees, skill, and ability" to meet the agreed upon deadlines outlined in the Order Forms. (D.I. 52 at 13–14; *see also* FAC at ¶¶ 60–63)

The court recommends that Defendants' motion to dismiss Count III of the FAC be granted because Live Oak's allegations are duplicative of allegations and relief demanded for the breach of contract claims. *See Mosiman v. Madison Cos., LLC*, 2019 WL 203126, at *3 (D. Del.

Jan. 15, 2019) (noting that a plaintiff "cannot assert a claim for breach of the implied covenant that is based on exactly the same acts which are said to be in breach of express covenants.").

Therefore, the court recommends that Defendants' motion to dismiss Count III pursuant to Rule 12(b)(6) for failure to state a claim be **GRANTED**.

### 3. Unjust Enrichment (Count IV)

"Unjust enrichment is the 'unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Stone & Paper Invs., LLC v. Blanch*, 2020 WL 3496694, at *12 (Del. Ch. June 29, 2020) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)). "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec*, 991 A.2d at 1130.

Unjust enrichment is "a theory of recovery to remedy the absence of a formal contract." *Stone & Paper Invs.*, 2020 WL 3496694, at *12. If a complaint alleges facts that also underlie a breach of contract claim, a claim for unjust enrichment should be dismissed. *S'holder Representative Servs. LLC v. Medidata Sols., Inc.*, 2020 WL 972618, at *4 (D. Del. Feb. 24, 2020), *report and recommendation adopted*, 2020 WL 8258358 (D. Del. Mar. 17, 2020).

Defendants argue that Count IV should be dismissed because it is based on the same conduct as Live Oak's breach of contract claim. (D.I. 46 at 9–11; D.I. 48 at 15–18) Live Oak argues that it permissibly asserts unjust enrichment in the alternative to its breach of contract claim. (D.I. 52 at 14–16 (citing *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *27 (Del. Ch. Nov. 26, 2014)))

The court recommends that Defendants' motion to dismiss Count IV be granted because Live Oak's relationship with Defendants is governed by the Order Forms, which are express contracts. (*See* FAC) "[I]f a plaintiff's pleading makes it uniformly clear that the plaintiff . . . ha[s] an alternate remedy at law (in the form of a breach of contract claim), then even under federal pleading standards, the plaintiff would not have sufficiently pleaded that element of an unjust enrichment claim." *S'holder Representative Servs. LLC*, 2020 WL 972618, at *4 (citing *Moon Express, Inc. v. Intuitive Machs., LLC*, 2017 WL 4217335, at *9 (D. Del. Sept. 22, 2017)).

Moreover, *Great Hill Equity Partners*, cited by Live Oak, is distinguishable. (D.I. 52 at 15) *Great Hill Equity Partners* limits the pleading of unjust enrichment in the alternative to a breach of contract claim to situations where "a plaintiff pleads a right to recovery not controlled by contract or where it is the [contract], itself, that is the unjust enrichment." 2014 WL 6703980, at *27 (alterations in original) (quotation marks omitted). Here, the Order Forms govern the parties' rights and obligations, and neither party disputes the Order Forms' validity. (*See* D.I. 38-2; D.I. 38-3)

Therefore, the court recommends that Defendants' motion to dismiss Count IV pursuant to Rule 12(b)(6) for failure to state a claim be **GRANTED**.

## IV.   CONCLUSION

For the foregoing reasons, the court recommends that MeridianLink's motion to dismiss Count II be **DENIED**, StreetShares and MeridianLink's motions to dismiss Counts I, III, and IV be **GRANTED**.

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In the event that the parties believe that certain material in this Report and Recommendation should

be redacted, the parties shall jointly submit a proposed redacted version of this Report and Recommendation by no later than August 7, 2024, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 924 F.3d 662, 672 (3d Cir. 2019) (quoting Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Report and Recommendation is issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. See Sincavage v. Barnhart, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); Henderson v. Carlson, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 24, 2024

Sherry R. Fallon
United States Magistrate Judge